IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2008 JUL 14 PM 1:22
CLERK _____
SO. DIST. OF GA.

| | |
|---|---|
| KEVIN DEMETRIUS WALKER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FRED BURNETTE, Warden; DAREN ) <br> ROBERSON, Sergeant; ANTHONY ) <br> ROGERS, Lieutenant; JUSTIN BAILEY, ) <br> Correctional Officer; FNU HERMAN, P.A.; ) <br> JOHN DOES; and JAMES E. DONALD, ) <br> the Commissioner of the Georgia ) <br> Department of Corrections, individually and ) <br> in their official capacities, ) <br> ) <br> Defendants. ) | CV 308-016 |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiff, an inmate incarcerated at Hancock State Prison in Sparta, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§

---

[1] At the time relevant to the claims alleged in this case, Plaintiff was incarcerated at the Telfair State Prison ("TSP") in Helena, Georgia.

1915(e) & 1915A.

## I. BACKGROUND

Upon review of Plaintiff's complaint and amendment, the Court finds the following. Plaintiff has filed the above-captioned case against: (1) Fred Burnett, Warden of TSP; (2) Daren Roberson, Sergeant at TSP; (3) Anthony Rogers, Lieutenant at TSP; (4) Justin Bailey, Correctional Officer at TSP; (5) FNU Herman, Physician's Assistant at TSP; (6) John Does, Officers at TSP; and (7) James E. Donald, the Commissioner of the Georgia Department of Corrections. (Doc. no. 1, pp. 1, 4; doc. no. 4, pp.1-2). Plaintiff's complaint and amendment allege claims of excessive force by officers, claims for deliberate indifference to Plaintiff's health, and claims regarding his conditions of confinement.

Plaintiff alleges that on June 10, 2007, a "code" was called in his housing unit, and officers came to the unit "as if force was to be used." (Doc. no. 1, p. 4). Plaintiff asserts that the officers did not follow proper procedures during the incident because they did not have the proper recording devises as required by SOP II BO8-0001. (Id.). However, according to Plaintiff, officers did take precautions by locking inmates in their cells, apparently showing their intent to use force. (Id.).

Next, Plaintiff states that the officers entered his cell; in the process of handcuffing Plaintiff, Defendant Roberson twisted Plaintiff's arm the wrong way. (Id.). Plaintiff states that at all times he was cooperating with the officers and when he felt his arm twisting, he merely turned around to tell the officer that his arm was being twisted. (Id.). As Plaintiff turned around, he claims that Defendant Roberson hit Plaintiff's face with a closed fist. (Id.). Plaintiff then states that several officers - including Defendant Rogers - rushed him and,

2

among other things, punched him repeatedly and pushed him up against a wall. (Id.). Plaintiff argues that the alleged use of excessive force continued as he was being transported to the sally port. (Id. at 5). For example, Plaintiff notes that Defendant Bailey rammed Plaintiff head first into the sally port bars and screamed some profanity at Plaintiff while hitting him in his back with his elbow. (Id. at 6). Plaintiff states that Defendants Bailey, Rogers, and Roberson proceeded to "severely brutalize Plaintiff with the assistance of officers [John Does]." (Id.).

Plaintiff claims that at this point, he could hardly stand. (Id.). He notes that Defendant Roberson instructed an officer to assist him in taking Plaintiff to the isolation building. (Id.). Plaintiff asserts that because he was so weak, as he was walking his leg became entangled with the leg of Defendant Roberson. (Id.). According to Plaintiff, Defendant Roberson accused Plaintiff of trying to kick him and proceeded to slam Plaintiff to the ground. (Id.). Plaintiff notes that at all times he was handcuffed. (Id.).

Plaintiff maintains that he was then placed in isolation and was stripped of clothes, bedding, and all property, as well as shackled and handcuffed. (Id.). He asserts that he notified second and third shift officers John Does that he was in need of medical attention. (Id.). Plaintiff notes that nothing was done, as TSP does not have medical staff available at night per Defendant Burnette's policy. (Id.). Plaintiff alleges that he continuously requested medical attention while he was in isolation; however John Does did not provide or arrange for Plaintiff to receive any medical treatment. (Id. at 8). Plaintiff states that he was held in a cell without a urinal, that he had to urinate in the styrofoam cups that his food was served in, and that he had to hold his bowels because "he could not get up and go to the toilet." (Id.

3

at 5).

Plaintiff states that he filed grievances about the incident. (Id.). He also notes that he was seen by Defendant Herman, who purportedly told Plaintiff he was "just fine," and that he should get up and walk around. (Id.). Plaintiff provides that several days later he was taken to an emergency room and x-rays were given. (Id.). A doctor at the emergency room detected that Plaintiff had a pinched nerve and gave Plaintiff a prescription for pain medication and an MRI. (Id.). Plaintiff then alleges that Defendant Herman informed Plaintiff that "the state don't have that kind of money to be paying for you." (Id.). Plaintiff states he was then left in an isolation cell for five more days; he alleges that he was in an unstable condition and suffering from constipation and that he lived in unsanitary conditions. (Id.).

Plaintiff provides that he was transferred to Calhoun State Prison ("CSP") where he stayed for three weeks, but he was transferred back to TSP because of some "fraudulent" information that Defendant Herman purportedly sent to the medical staff at CSP. (Id. at 6). Though it is unclear when or where, Plaintiff apparently had two MRIs performed on him; he observes that it was not until September 29, 2007 that he was made aware that he has bulging discs in his lower back. (Id. at 7). Plaintiff also contends that he continued to be neglected concerning his medical treatment.

Plaintiff is also dissatisfied with the grievance procedure at TSP. (Id. at 7). According to Plaintiff, he has written several grievances about different incidents, and they have all been denied. (Id.). He observes that "in fact, the grievance process at TSP has shown to be such a failure that most inmates feel they can't rely on it for any righteous

4

results." (Id.). Plaintiff accuses Defendant Burnette and Deputy Warden Spires of "influencing the authorities at TSP to go to a preposterous point of perverseness all in an attempt to circumvent the grievance procedures and emulate the inmates to bring about justice to the unjust acts hidden behind the manipulated illusions of TSP...." (Id.).

Plaintiff also makes several allegations specific to Defendant Burnette. First, he alleges that Defendant Burnette conspired with his staff members by denying grievances filed by Plaintiff. (Doc. no. 4, p.1). Second, Plaintiff alleges that per Defendant Burnette's policy, medical attention is not available at TSP on a 24 hour basis as such inmates are denied adequate medical care. (Id.). Plaintiff claims that Defendant Burnette allowed Defendant Roberson to continue harassing Plaintiff. (Id.). In addition, Plaintiff states that Defendant Burnette conspired to retaliate against Plaintiff by showing a deliberate indifference to Plaintiff's being held in segregation to further punish Plaintiff and deny him adequate medical care as well as equal access to the courts. (Id.).

Plaintiff alleges that James E. Donald, the Commissioner of the Georgia Department of Corrections, showed deliberate indifference by "being cognizant but inactive to the concerns of the [P]laintiff being brutalized and denied adequate medical care." (Id. at 2). Plaintiff asserts that he was retaliated against by being "transferred with a negative labeling to an institute that does not have the vegan diet available." (Id.). Plaintiff notes that he wrote Defendant Donald "upon arriving at Valdosta State Prison, but again [Defendant Donald] conspired with deliberate indifference to the perverse ramifications of constitutional violations." (Id.). Plaintiff seeks injunctive relief and monetary compensation.

5

## III. DISCUSSION

A. **Procedures and Grievance Claims**

To the extent Plaintiff alleges that his constitutional rights were violated by Defendant Burnette, because his grievances and appeals were mishandled as to their investigation or otherwise processed in a manner that did not comply with TSP grievance procedures, his claim must fail. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.").

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the

6

trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff states that Defendant Burnette conspired with his staff members by denying grievances filed by Plaintiff; he observes that "in fact, the grievance process at TSP has shown to be such a failure that most inmates feel they can't rely on it for any righteous results." Plaintiff accuses Defendant Burnette and Deputy Warden Spires[2] of "influencing the authorities at TSP to go to a preposterous point of perverseness all in an attempt to circumvent the grievance procedures and emulate the inmates to bring about justice to the unjust acts hidden behind the manipulated illusions of TSP. . . ." However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Therefore, Plaintiff's claims against Defendant Burnette, regarding an alleged violation of the grievance procedures fails as a matter of law.

**B.     Access to the Courts**

Plaintiff also alleges that Defendant Burnette denied him equal access to the courts. (Doc. no. 4, p. 1). To state a viable denial of access to the courts claim, a Plaintiff must plead and prove actual injury to existing or contemplated litigation or nonfrivous (and therefore viable) claims challenging Plaintiff's sentence or conditions of confinement.

---

[2]Deputy Warden Spires is not a named defendant in this case.

7

Lewis v. Casey, 518 U.S. 343, 349-55 (1996); see also Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998) (emphasizing that an inmate's right to access the courts is only implicated where there is actual injury suffered "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement."). The Eleventh Circuit has clarified the requirements for pursuing a denial of access to the courts claim as follows:

> [A] plaintiff first must show actual injury before seeking relief . . . . This essential standing requirement means that [a defendant's] actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. To prevail, a plaintiff must provide evidence of [] deterrence, such as denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of [a defendant].

Blankenship, 163 F.3d at 1290-91(citations omitted). Stated otherwise, there must be an allegation that the actions of a defendant acting under the color of state law "hindered . . . 'efforts to proceed with a legal claim in a criminal appeal, post conviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. at 1291 (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (*per curiam*)).

Although Plaintiff states that Defendant Burnette denied Plaintiff of adequate access to the courts by leaving Plaintiff in isolation, Plaintiff fails to alleges facts which demonstrate that he had possibly viable claims that were negatively impacted by his time spent in isolation. Nor does he say that the time he spent in isolation resulted in a dismissal or any detriment to any case. Moreover, Plaintiff does not claim that he was denied all access to legal material, he simply states that he was denied equal access to the courts with nothing more. As such, Plaintiff's denial of access to the courts claims should be dismissed.

## C. Retaliation

Additionally, Plaintiff claims that Defendant Burnette "showed retaliation by placing Plaintiff in conditions that deprived Plaintiff of adequate access to the courts and adequate medical attention." (Doc. no. 4, p. 1). According to Plaintiff, Defendant Burnette's final act of retaliation was transferring Plaintiff to a prison without a vegan diet as a means of further punishment. (Id.). Under the First Amendment, prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). A prisoner may state a cognizable § 1983 claim by alleging that the actions of prison officials "that might not otherwise be offensive to the Constitution" may be brought "within the scope of the Constitution by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances." Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). In Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005), the Eleventh Circuit clarified the standard for asserting a cognizable retaliation claim: "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights." Id. at 1254.

Here, Plaintiff submits that Defendant Burnette punished Plaintiff, but Plaintiff omits any fact that this punishment was cause by a protected right. For example, Plaintiff does not state this punishment was as a result of his filing grievances or lawsuits. Plaintiff merely submits that he was punished. Therefore, Plaintiff has failed to state a viable retaliation claim.

## D. Claim Against Defendant Donald

Next, Plaintiff's claim against Defendant Donald fails as a matter of law. Plaintiff

blames Defendant Donald for the acts of his subordinates within the Department of Corrections, without alleging any personal involvement by Defendant Donald in protecting Plaintiff's safety and/or providing medical care. However, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As noted above, Plaintiff has not alleged that Defendant Donald actually participated in his medical care or was personally responsible for his safety at TSP. Although, Plaintiff claims to have sent Defendant Donald two letters, he does not provide what the letters purported to state; nor does he claim that Defendant Donald actually received the letters. Thus there is no reason to suppose that this Defendant was even aware of a problem regarding Plaintiff's safety and/or medical needs, much less that he was deliberately indifferent to these medical needs.

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Donald and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a

history of widespread abuse[3] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff's claim that he purportedly sent two letters to Defendant Donald does not support that Defendant Donald knew about any widespread abuse or that he was responsible for a custom or policy which resulted in deliberate indifference to Plaintiff's safety and/or medical needs.[4] In sum, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Donald.

E.  **General Conspiracy**

Finally, to the extent Plaintiff suggests that there was some sort of conspiracy afoot

---

[3]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

[4]To the extent Plaintiff is alleging Defendant Donald was aware of the purported wide spread abuse by the filing of a grievance or letters, this does not satisfy the burden of putting a supervisor on notice of a widespread problem or otherwise show that the supervisor was directly involved with Plaintiff's alleged claims. See Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

11

between Defendants Burnette and the authorities at TSP regarding the grievance procedures, and Defendants Burnette and Donald regarding unspecified retaliation, such allegations fail to state a claim upon which relief can be granted. That is, a conspiracy claim supported only by conclusory, vague, and general allegations may be dismissed. Kearson v. Southern Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir. 1985) (*per curiam*); see also Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) ("[A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory... It is not enough to simply aver in the complaint that a conspiracy existed."). To prove conspiracy under § 1983, a plaintiff must (1) prove the parties had a "meeting of the minds" or reached an understanding to violate the plaintiff's rights and (2) prove an actionable wrong to support the conspiracy. Bailey v. Board of County Comm'rs of Alachua County, Fla., 956 F.2d 1112, 1122 (11th Cir. 1992). "[T]he linchpin for conspiracy is agreement, which presupposes communication . . . ." Id. Here, Plaintiff does not offer any specifics on when or how an agreement between any persons, let alone an agreement involving Defendants Burnette and Donald, may have been reached to violate Plaintiff's rights. Accordingly, Plaintiff has failed to state viable conspiracy claims, and thus, such claims should be dismissed.[5]

---

[5] In a simultaneously filed Order, the Court has directed that service of process be effected on Defendants Burnette, Herman, Roberson, Bailey, Rogers, and John Does with respect to Plaintiff's Eighth Amendment claims for delay in medical treatment, conditions of confinement, and use of excessive force.

## VI. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims alleging a violation of the TSP grievance procedure, denial of access to the courts, retaliation, conspiracy, and claims against Defendant Donald, be **DISMISSED** from this case for failure to state a claim.

SO REPORTED and RECOMMENDED this 14th day of July, 2008, at Augusta, Georgia.

```
                              W. LEON BARFIELD
                              UNITED STATES MAGISTRATE JUDGE
```