# ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2009 APR 17 PM 12: 18

CLERK _L. Flbredere_
SO. DIST. OF GA.

KEVIN DEMETRIUS WALKER,          )
                                 )
             Plaintiff,          )
                                 )
        v.                       )      CV 308-016
                                 )
DAREN ROBERSON, Sergeant, et al.,)
                                 )
             Defendants.         )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, an inmate at Hancock State Prison located in Sparta, Georgia, commenced

the above-captioned action pursuant to 42 U.S.C. § 1983.[1]  Plaintiff is proceeding *pro se* and

*in forma pauperis* ("IFP").  The matter is presently before the Court on "Defendants' Pre-

Answer Motion to Dismiss" (doc. no. 27), "Defendant Herman's Pre-Answer Motion to

Dismiss" (doc. no. 28), and "Defendant Herman's Supplement to Motion to Dismiss" (doc.

no. 32).  Plaintiff has responded to these motions (doc. nos. 29, 30, 35, 37, 39),[2] and

---

[1] At the time of the events forming the basis of the complaint Plaintiff was
incarcerated at Telfair State Prison ("TSP").

[2] On November 18, 2008, the Court entered an Order staying discovery. (Doc. no.
36). In "Plaintiff's Supplementary Opposition to Defendants' Motion to Dismiss," (doc. no.
37), Plaintiff claims he is unable to properly oppose Defendants' motion to dismiss in the
absence of discovery. (Id.). In support of this argument Plaintiff maintains that without
discovery he does not have access to his grievance record, his medical records, or the prison
policies and procedures. (Id.). First, the Court notes that Defendants provided Plaintiff with
a copy of his grievance record and the prison policies and procedures. (Doc. no. 38, pp. 1-2).
Additionally, the Court notes that in addressing Defendants' various motions to dismiss,
Plaintiff's medical records are irrelevant. Therefore, to the extent Plaintiff's opposition seeks
discovery concerning his grievance record, his medical records, and the prison policies and

Defendants have replied to Plaintiff's responses (doc. nos. 31, 34, 38). The Court will also address Plaintiff's failure to timely effect service on Defendants Bailey and John Does. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants Bailey and John Does be **DISMISSED** without prejudice and that Defendants' motions to dismiss (doc. nos. 27, 28, 32) be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff's complaint and amendment[3] allege claims of excessive force, claims for deliberate indifference to Plaintiff's health, and claims regarding his conditions of confinement. The Court sanctioned Plaintiff's claims for delayed medical treatment against Defendants Burnette, Herman, and John Does and his conditions of confinement claims against Defendant Burnette. The Court also sanctioned Plaintiff's claim for the use of excessive force against Defendants Roberson, Bailey, Rogers, and John Does. (Doc. no. 11, p. 6). For purpose of these motions to dismiss, the Court will recount the relevant facts as first set out when screening Plaintiff's claims.

Plaintiff alleges that on June 10, 2007, officers entered his cell; in the process of handcuffing Plaintiff, Defendant Roberson twisted Plaintiff's arm the wrong way. (Id.). Plaintiff states that at all times he was cooperating with the officers and when he felt his arm

___

procedure, his request need not delay the Court's resolution of the motions to dismiss. Of course, should the presiding District Judge adopt the recommendation herein, the Court's November 18, 2008, stay will no longer be in effect, and the case will proceed accordingly.

[3]In screening Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e) & 1915A, the Court considered both Plaintiff's complaint and amendment, as the amendment simply sought to add James E. Donald as a Defendant and attempted to clarify previously stated claims.

twisting, he merely turned around to tell the officer that his arm was being twisted. (Id.). As Plaintiff turned around, he claims that Defendant Roberson hit Plaintiff's face with a closed fist. (Id.). Plaintiff then states that several officers - including Defendant Rogers - rushed him and, among other things, punched him repeatedly and pushed him up against a wall. (Id.). Plaintiff argues that the alleged use of excessive force continued as he was being transported to the sally port. (Id. at 5). For example, Plaintiff notes that Defendant Bailey rammed Plaintiff head first into the sally port bars and screamed some profanity at Plaintiff while hitting him in his back with his elbow. (Id. at 6). Plaintiff states that Defendants Bailey, Rogers, and Roberson proceeded to "severely brutalize Plaintiff with the assistance of officers [John Does]." (Id.).

Plaintiff claims that at this point, he could hardly stand. (Id.). He notes that Defendant Roberson instructed an officer to assist him in taking Plaintiff to the isolation building. (Id.). Plaintiff asserts that because he was so weak, as he was walking his leg became entangled with the leg of Defendant Roberson. (Id.). According to Plaintiff, Defendant Roberson accused Plaintiff of trying to kick him and proceeded to slam Plaintiff to the ground. (Id.). Plaintiff notes that at all times he was handcuffed. (Id.).

Plaintiff maintains that he was then placed in isolation and was stripped of his clothes, bedding, and all property, as well as shackled and handcuffed. (Id.). He asserts that he notified second and third shift officers John Does that he was in need of medical attention. (Id.). Plaintiff notes that nothing was done, as TSP does not have medical staff available at night per Defendant Burnette's policy. (Id.). Plaintiff alleges that he continuously requested medical attention while he was in isolation; however, John Does did not provide or arrange

3

for Plaintiff to receive any medical treatment. (Id. at 8). Plaintiff states that he was held in a cell without a urinal, that he had to urinate in the styrofoam cups that his food was served in, and that he had to hold his bowels because "he could not get up and go to the toilet." (Id. at 5).

Plaintiff states that he filed grievances about the incident. (Id.). He also notes that he was seen by Defendant Herman, who purportedly told Plaintiff he was "just fine," and that he should get up and walk around. (Id.). Plaintiff states that several days later he was taken to an emergency room and x-rays were taken. (Id.). A doctor at the emergency room detected that Plaintiff had a pinched nerve and gave Plaintiff a prescription for pain medication and ordered an MRI. (Id.). Plaintiff then alleges that Defendant Herman informed Plaintiff that "the state don't have that kind of money to be paying for you." (Id.). Plaintiff states he was then left in an isolation cell for five more days; he alleges that he was in an unstable condition, suffering from constipation, and living in unsanitary conditions. (Id.).

Plaintiff states that he was eventually transferred to Calhoun State Prison ("CSP") where he stayed for three weeks, but he was transferred back to TSP because of some "fraudulent" information that Defendant Herman purportedly sent to the medical staff at CSP. (Id. at 6). Though it is unclear when or where, Plaintiff apparently had two MRIs performed on him; he observes that it was not until September 29, 2007 that he was made aware that he has bulging discs in his lower back. (Id. at 7). Plaintiff also contends that he continued to be neglected concerning his medical treatment.

Concerning Defendant Burnette, Plaintiff alleges that per Defendant Burnette's

4

policy, medical attention is not available at TSP on a 24 hour basis as such inmates are denied adequate medical care. (Doc. no. 4, p. 1).

The Court sanctioned Plaintiff's Eighth Amendment claims of delayed medical treatment against Defendants Burnette, Herman, and John Does and his conditions of confinement claims against Defendant Burnette. However, Plaintiff's claims concerning the grievance procedure, access to the courts, retaliation, conspiracy, and Defendant Donald, have been dismissed from the case.

Defendants now seek to dismiss several of Plaintiff's claims for Plaintiff's failure to exhaust his administrative remedies, failure to state a claim upon which relief can be granted, and on the basis of Eleventh Amendment immunity and qualified immunity. (See generally doc. nos. 27, 28, 32). Defendants conclude that the only claim that should survive at this stage of the proceedings is Plaintiff's claim against Defendants Roberson and Rogers in their individual capacities alleging excessive use of force. (Doc. no. 27, p. 24). Plaintiff, on the other hand, argues that he did exhaust the administrative remedies that were available to him, he has stated claims upon which relief can be granted, and Defendants are not entitled to any immunity. (See generally doc. nos. 29, 30, 35, 37, 39).

## II. DISCUSSION

### A.    Dismissal of Defendants Based on Plaintiff's Failure to Timely Effect Service

Under Fed. R. Civ. P. 4(l), "[u]nless service is waived, proof of service must be made to the court." The time period for service has now elapsed, and there is neither a waiver of service nor any other proof of service in the record. Under Fed. R. Civ. P. 4(m), the courts have discretion to extend the time for service with no predicate showing of good cause.

5

Henderson v. United States, 517 U.S. 654, 662-63 (1996); Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1132 (11th Cir. 2005). Moreover, if a plaintiff fails to show good cause for failing to timely effect service, a court "must still consider whether any other circumstances warrant an extension of time based on the facts of the case." Lepone-Dempsey v. Carroll County Comm'rs, 476 F.3d 1277, 1282 (11th Cir. 2007). Nevertheless, the decision to extend the time for service is within the Court's sound discretion.

The Advisory Committee Note to Rule 4(m) provides some guidance as to factors that may justify an extension of time for service. Such considerations include if a defendant is evading service or if the statute of limitations would bar a refiled action. Horenkamp, 402 F.3d at 1132-33 (citing Advisory Committee Note to 1993 Amendment to Rule 4(m)). There is no evidence of either factor in this case.

In this case, on July 14, 2008, the Court directed that service of process be effected upon Defendants Fred Burnette, FNU Herman, and John Does for Plaintiff's claim of delayed medical treatment, Defendant Burnette for Plaintiff's claim concerning his conditions of confinement, and Defendants Daren Roberson, Justin Bailey, Anthony Rogers, and John Does for Plaintiff's claim for the use of excessive force. (Doc. no. 11, pp. 2-7). In that Order, the Court explained that although the United States Marshal was directed to serve Defendants, it was Plaintiff's responsibility to provide sufficient information for the Marshal to identify and locate Defendants to effect service. (Id. at 7). Furthermore, Plaintiff was informed of the requirement that service be effected within 120 days of the date of the Court's July 14th Order. (Id. (citing Fed. R. Civ. P. 4(m)). Plaintiff was also informed that if Defendants were not timely served within this 120-day period, they were subject to

6

dismissal from this action. (Id. at 7-8).

The Marshal attempted to effect service of process upon Defendants Bailey and the John Does. (See doc. nos. 15-17). However, the process receipt and return indicate that Defendant Bailey could not be located at TSP because he no longer worked for the Georgia Department of Corrections and failed to leave a forwarding address with TSP or the Georgia Department of Corrections. (See doc. no. 15). Concerning the John Does, the process receipt and return indicated that in order for them to be served, their real names are needed. (See doc. nos. 16, 17). Therefore, the Marshal was unable to effect service upon Defendants Bailey and John Does.

In light of the unexecuted waivers of service, the Court explained to Plaintiff that although his IFP status allows him to rely on upon the Marshal to effect service of process, he is responsible for determining the appropriate names and service address for Defendants Bailey and John Does such that these Defendants may be located to effect service. (Doc. no. 24). The Court further explained to Plaintiff that he must determine the appropriate names and service addresses where these Defendants could be located and should immediately inform the Court once such information is discovered. (Id.). Plaintiff was specifically informed that the 120-day period for effecting service of process expired on November 14, 2008. (Id.). Finally, the Court admonished Plaintiff that if service was not effected within this time period, these Defendants may be dismissed without prejudice. (Id.).

Service was never effected on Defendants Bailey and John Does. Plaintiff never submitted any additional information in an attempt to have these Defendants served, nor did he request for any additional time to comply with the service requirements. In sum, the

record reflects that Plaintiff has not offered any reason for why these Defendants have not been served. Plaintiff has not shown good cause why Defendants Bailey and John Does should not be dismissed without prejudice for failure to effect service, and therefore, the Court must consider whether other circumstances warrant an extension of time for service. Plaintiff's claims sanctioned by the Court assert ongoing improper medical care and a claim for use of excessive force on June 10, 2007. (Doc. no. 1). Thus, it does not appear that dismissal of these Defendants, without prejudice, will pose a problem under Georgia's two-year statute of limitations that applies to § 1983 claims. See Lawson v. Glover, 957 F.2d 801, 803 (11th Cir. 1987); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986).

The Court also notes that the record lacks any evidence that Defendants Bailey and John Does are evading service. Finally, the Advisory Committee Notes recognize that courts should take care to protect *pro se* plaintiffs. Here, after the waivers of service for Defendants Bailey and John Does were returned unexecuted, the Court warned Plaintiff that service must be executed by November 14, 2008, the Court further warned Plaintiff that failure to timely serve these Defendants may result in dismissal without prejudice of these Defendants. Despite this warning, Plaintiff failed to submit any information or make any requests in furtherance of having these Defendants served. Therefore, Plaintiff failed to effect service by November 14, 2008, or provide any reason why this case should not be dismissed for that failure to effect service.

In sum, Defendants Bailey and John Does have not been served, the time for effecting service under Rule 4 has expired, and Plaintiff has failed to provide any reason for the failure to effect service. Accordingly, these Defendants should be dismissed from the case without

8

prejudice. Nelson v. Barden, 145 Fed. Appx. 303, 311 (11th Cir. Aug. 10, 2005) (*per curiam*) (affirming dismissal without prejudice for failure to timely effect service pursuant to Rule 4(m)).

**B.     Dismissal Based on a Failure to Exhaust**

**1.     Applicable Legal Standard for Exhaustion**

Where a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, as Defendants have here, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
>
> . . . .
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues. . . . The defendants bear the burden of proving that the plaintiff has failed to exhaust his administrative remedies. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings, the prisoner has exhausted his available administrative remedies.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 129 S. Ct. 733 (U.S. Dec. 8, 2008)). Where exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

9

## 2.     Failure to Exhaust Administrative Remedies

As noted by Defendants, the Court sanctioned Plaintiff's claims for: (1) excessive use of force on June 10, 2007; (2) delay in medical treatment on June 10, 2007; (3) ongoing denial of medical treatment and medication since June 10, 2007; and (4) unsanitary conditions of confinement. Defendants contend that Plaintiff failed to exhaust administrative remedies concerning two of the four claims: (1) his claims alleging ongoing delay in medical treatment, and (2) his claim for unsanitary conditions of confinement. (Doc. no. 27, p. 6).

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act 's ("PLRA") mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 92 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90-91 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006). Put

plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. App'x 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) *(per curiam)*; see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Within the Georgia Department of Corrections, the administrative grievance process is governed by SOP IIB05-0001. Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. See SOP IIB05-0001 § VI(B). The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within ten (10) calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. § VI(B)(12)-(13).

11

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five (5) business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2),(5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

Following the Burnside test set forth *supra*, the Court first looks to Defendants' factual allegations. See Burnside, 541 F.3d at 1082-83. Defendants contend that Plaintiff failed to exhaust administrative remedies concerning his claims alleging ongoing denial of medical treatment and unsanitary conditions of confinement. (Doc. no. 27, p. 6). Defendants state that Plaintiff has not filed any grievance concerning his allegations of unsanitary conditions of confinement. (Id. at 9). Defendants further state, Plaintiff failed to appeal the warden's decision rejecting Plaintiff's grievance concerning his claim alleging the denial of ongoing medical treatment. (Id. at 9-10).

In reply, Plaintiff contends that he exhausted all administrative remedies that were available to him. (See generally doc. nos. 29, 30, 35, 39). Concerning Defendants' argument that Plaintiff did not file any grievance regarding his allegation of unsanitary conditions of confinement, Plaintiff argues that "perhaps the grievances did not identify every specific

12

complaint made by Plaintiff, nonetheless, the grievance sufficiently put Defendants on notice to timely resolve the issues; however, Defendants made no attempt at all to resolve the issues." (Doc. no. 39, p. 2). Plaintiff further argues that his conditions of confinement claim is not separate from his excessive force claim - for which he did exhaust his administrative remedies - and therefore, he has exhausted his administrative remedies for his conditions of confinement claim. (Doc. no. 29, p. 2).

Concerning Plaintiff's allegation of ongoing denial of medical treatment, he maintains that he exhausted administrative remedies to the extent available. (Doc. no. 29, p. 2). He argues that he was transferred to Valdosta State Prison ("VSP") where the SOP for addressing grievances differs from all other state prisons. (Id.). Plaintiff maintains that all grievances at VSP must be sent through the prison mail system, rather than personally directed to counselors. (Id.). He argues that he mailed his grievance, but then he was transferred to Hancock State Prison ("HSP"). (Id.). According to Plaintiff, he wrote a letter and sent it to VSP inquiring as to the status of his grievance; however, he never received any response. (Id.).

As Plaintiff's and Defendants' version of the facts conflict, the Court must take Plaintiff's allegations as true. See Burnside, 541 F.3d at 1082-83. Thus, at this point, Plaintiff's claims are not subject to dismissal. Next, however, under Burnside, the Court must make specific findings in order to resolve the disputed factual issues. Id.

Defendants argue that Plaintiff has not grieved his conditions of confinement claims. (Doc. no. 27, p. 11). Defendants note that a review of Plaintiff's grievance record reveals that he filed 16 grievances at TSP following the June 10, 2007 incident, none of which

13

addressed any complaints of unsanitary conditions of confinement. (Doc. no. 27, Winter Aff. ¶ 17). On the other hand, Plaintiff argues that his claim for unsanitary conditions of confinement is addressed and thereby exhausted through grievance number 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. (Doc. no. 35, pp. 1, 2; doc. no. 39, p. 2). Specifically, Plaintiff maintains that the unsanitary conditions of confinement claim was a part of the delay in treatment complaint raised in grievance number 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. (Doc. no. 35, p. 1). Plaintiff contends that his unsanitary conditions of confinement claim should not be dismissed based on a failure to exhaust his administrative remedies because of his "lack of cognizance of how to write grievances using a lawyers intellect." (Id.).

Notably, in grievance number 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, Plaintiff complains that he was "jumped on by a continual harassing officer," resulting in injuries which need medical attention. (Doc. no. 31, Ex. 1). The grievance further addresses Plaintiff's allegation that he was denied any medical treatment on June 10, 2007, and complains that he waited over 16 hours before being provided with medical treatment. (Id.). Yet, Plaintiff's conditions of confinement claim is based on allegations that he was held in a cell without a urinal, that he had to urinate in the styrofoam cups that his food was served in, and that he had to hold his bowels because "he could not get up and go to the toilet." Plaintiff also raises allegations that he (1) was left in an isolation cell for five more days; (2) was in an unstable condition; (3) was suffering from constipation; and (4) lived in unsanitary conditions. (Doc. no. 1, p. 5). The Court disagrees with Plaintiff's contention that the unsanitary conditions of confinement claim were a part of the claims raised in the grievance concerning a delay in medical treatment.

Accordingly, the Court finds that grievance number 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 does not encompass the claim Plaintiff raised in his complaint addressing the purported unsanitary conditions of confinement, and Plaintiff has failed to exhaust his administrative remedies as to the conditions of confinement claim.

The Court next turns its attention to whether Plaintiff exhausted his claim of ongoing denial of medical treatment. Defendants maintain that Plaintiff's grievance records reveal that Plaintiff failed to exhaust his claim regarding the ongoing denial of medical treatment since June 10, 2007, because Plaintiff failed to appeal from the warden's decision rejecting Plaintiff's grievance. (Doc. no. 27, p. 10). Plaintiff concedes that he failed to appeal grievance number 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. (Doc. nos. 29, 30). However, Plaintiff argues that the appeal procedure was not available to him, and thus, he exhausted this claim to the extent available to him. Moreover, Plaintiff notes that grievance number 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, which has been fully exhausted, addresses his claim that he has been denied medical treatment on a continuing basis. (Doc. no. 35).

Concerning grievance number 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, the Court concurs with Defendants that Plaintiff failed to appeal the warden's decision and thus failed to complete the grievance process. Failure to appeal the denial of this grievance in and of itself means that Plaintiff failed to exhaust his administrative remedies, as he is required to "us[e] all steps" in the administrative process. Woodford, 548 U.S. at 90-91. Furthermore, the Court finds unavailing Plaintiff's argument that his transfer from VSP somehow inhibited his ability to complete the grievance procedure. (Id.). As noted by Defendants, inmates have 5 days from the time they receive a response to their grievance in which to file an appeal. (Doc. no. 38,

p. 4; doc. no. 31, Ex. 4). Plaintiff received the warden's response to grievance number 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 on December 4, 2007, while Plaintiff was at VSP. (Doc. no. 31, Ex. 3). His records were returned from VSP to TSP on December 17, 2007 (doc. no. 31, Ex. A); the 5 days to appeal had long since expired by December 17th, and Plaintiff had not appealed the grievance. Furthermore, the record reflects that Plaintiff was not transferred from VSP to HSP until January 15, 2008. (Id. at Ex. B). Therefore, Plaintiff's failure to timely appeal grievance number 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 occurred well before his transfer to HSP.

Furthermore, the Court finds that Plaintiff has not shown that any prison officials at TSP or VSP prevented or otherwise inhibited him from exhausting administrative remedies prior to filing suit. Under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"[4] Johnson, 418 F.3d at 1155, 1156. Likewise, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. As the Court has noted *supra*, the plain language of § 1997e(a) forbids any inquiry except into whether administrative remedies are "available." In order to demonstrate that administrative remedies were unavailable, Plaintiff must point to specific facts showing that prison staff inhibited him from utilizing the grievance process. See Boyd v. Corr.

---

[4]Whether that possibility may be slight is irrelevant. The Eleventh Circuit has explained that, even if the likelihood of obtaining administrative relief is akin to that of being struck by lightning, an inmate must still exhaust administrative remedies. See Alexander, 159 F.3d at 1325 (quoting Irwin v. Hawk, 40 F.3d 347, 349 (11th Cir. 1994) ("No doubt denial *is* the likeliest outcome, but that is not sufficient reason for waiving the requirement of exhaustion. Light[]ning may strike; and even if it doesn't, in denying relief the [administrative authority] may give a statement of its reasons that is helpful to the district court in considering the merits.")).

Corp. of Am., 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies). Plaintiff cannot show that administrative remedies were unavailable simply by making a blanket allegation without any supporting evidence. Of course, those federal courts to consider the issue have held that threats of violent reprisal can, under certain circumstances, render administrative remedies "unavailable" or otherwise justify an inmate's failure to pursue them. See, e.g., Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004). More generally, courts have held that prison officials may, as a result of their own conduct, become equitably estopped from relying upon § 1997e(a).[5, 6]

Of particular note, in Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999), the Eleventh Circuit explained that prison officials cannot "unequivocally" tell an inmate that resort to administrative remedies is "precluded" or "even prohibited" and then rely upon § 1997e(a) to argue that the inmate failed to exhaust available administrative remedies. Taken together, these cases stand for the simple proposition that prison officials should not benefit from conduct which inhibits an inmate from properly exhausting administrative remedies. That principle of law does not alter the key inquiry--whether administrative remedies were actually "available" to Plaintiff prior to the filing of the instant suit. As set forth above, Plaintiff has

_____

[5]See, e.g., Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (*per curiam*); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 n.2 (5th Cir. 2001).

[6]To the extent Plaintiff is arguing that Defendants should be estopped from relying on § 1997e(a) because of their own misconduct, it is his burden to establish his entitlement to this equitable remedy. See Lewis v. Washington, 300 F.3d 829, 834 (7th Cir. 2002).

failed to demonstrate that administrative remedies were unavailable.

Admittedly, the Eleventh Circuit has expressed concern when prison officials tell a prisoner "unequivocally" that further resort to the administrative process is "futile, even prohibited." Miller, 196 F.3d at 1194. However, the instant case is far removed from the Eleventh Circuit's concerns in Miller. First, in Miller the plaintiff relied upon actual documentary evidence proving that he had been instructed by prison officials that an administrative appeal was prohibited. Id. In contrast, Plaintiff has presented no evidence, save his own self-serving statements, and his statements are squarely contradicted by the record.

In this regard, it is not improper for the Court to demand some evidence beyond Plaintiff's own self-serving statements showing that administrative remedies were not available. In Kozuh v. Nichols, No. 05-15207, 2006 WL 1716049, at *2 (11th Cir. June 22, 2006), the Eleventh Circuit rejected a prisoner's claim "that he was 'thwarted' when officials refused to respond to his grievances, leaving the grievance procedure unavailable." In rejecting Kozuh's argument for lack of evidence, the Eleventh Circuit noted the existence of contrary evidence that "Kozuh was able to file numerous informal complaints." Id. at *3. The instant case is similar. Although Plaintiff maintains otherwise, there is ample evidence in the record from which to conclude that the grievance process was available to Plaintiff concerning grievance number 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. As such, Plaintiff failed to exhaust his administrative procedure concerning grievance number 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, even though all levels of the procedure were available to him.

Nonetheless, the Court notes that grievance number 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 also addresses Plaintiff's claim of ongoing denial of medical treatment. This grievance addresses Plaintiff's complaints that he has not received pain medication prescribed by an emergency room

18

doctor, that he was given the wrong medication, and that medication [that he was presumably prescribed] was simply discontinued. (Id. at Ex. 2). Although Defendants acknowledge that Plaintiff submitted grievance number 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 in support of his argument that he has exhausted his claims, Defendants do not address this grievance or its effect on the exhaustion issue. Here, the Court finds that grievance number 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, that has been through all the steps of the grievance procedure, sufficiently addresses Plaintiff's claims concerning his allegations of ongoing denial of medical treatment. As such, Plaintiff's claims concerning his purported ongoing denial of medical treatment have been exhausted.

In sum, the Court finds that Plaintiff failed to address his allegations concerning the purported unsanitary conditions of confinement in any grievance. However, he did file a grievance and complete all steps in the grievance procedure concerning the ongoing denial of medical treatment, and thus exhausted his administrative remedies as to his claim concerning the ongoing denial of medical treatment. Therefore, under the Burnside test, the Court finds that Plaintiff has failed to exhaust his administrative remedies within the Georgia Department of Corrections as to his claim of unsanitary conditions of confinement, and thus this claim should be dismissed. Accordingly, Defendants' motion to dismiss for failure to exhaust should be **GRANTED** as to Plaintiff's claim of unsanitary conditions of confinement but **DENIED** as to Plaintiff's claim of ongoing denial of medical treatment.

## C. Dismissal for Failure to State a Claim Upon Which Relief Can be Granted

Defendants also raise various arguments in which they maintain, *inter alia*, that Plaintiff's claims against Defendants Burnette and Herman should be dismissed, as well as all claims against Defendants in their official capacity. (Doc. nos. 27, 28). Plaintiff argues that

19

he has sufficiently stated claims upon which relief can be granted and that Defendants are not entitled to any immunity. (Doc. nos. 29, 28, 30, 35).

### 1. Applicable Legal Standard

A motion under Rule 12(b)(6) challenges the legal sufficiency of the complaint. "In essence, a movant says, 'Even if everything you allege is true, the law affords you no relief.'" Johnson v. Fleet Finance, Inc., 785 F. Supp. 1003, 1005 (S.D. Ga. 1992) (Edenfield, J.). In deciding a motion to dismiss under Rule 12(b)(6), all of the non-moving party's allegations must be presumed true and all reasonable inferences must be construed in the light most favorable to the non-moving party. Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990). Furthermore, a claim presented by a *pro se* litigant like Plaintiff should not be dismissed if the facts alleged in the complaint are sufficient to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007). Moreover, granting a motion to dismiss is disfavored and rare. Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). Finally, while factual allegations in the complaint must be taken as true when considering a motion to dismiss, there is no requirement that the Court must accept as true the plaintiff's conclusions of law. See Solis-Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1429 (11th Cir. 1985). With these principles in mind, the Court turns its attention to the motion at hand.

### 2. Failure to State a Claim Against Defendant Burnette

Plaintiff has asserted two claims – the purported unsanitary conditions of confinement and the purported ongoing denial of medical treatment – against Defendant Burnette. As noted

above, Plaintiff's claim on the purported unsanitary conditions of confinement has not been exhausted and thus should be dismissed. Therefore, the only remaining claim against Defendant Burnette is Plaintiff's claim of ongoing denial of medical treatment.

Defendants argue that this claim should be dismissed because Plaintiff named Defendant Burnette based on his supervisory capacity and because Plaintiff failed to state a valid Eighth Amendment claim for inadequate medical care. (Doc. no. 27, pp. 10, 12-15). Specifically, Defendants argue that Plaintiff fails to make any specific allegations with regard to Defendant Burnette and the purported ongoing denial of medical treatment and medication following the June 10, 2007 incident. (Id. at 13). Defendants further argue that Plaintiff failed to allege a history of denial of medical treatment and medication, that Warden Burnette directed officers to deny him treatment and medication, or that Warden Burnette has a custom or policy of denying inmates treatment and medication. (Id.). Defendants conclude by noting that Plaintiff's complaint raises allegations against Defendant Burnette only in his supervisory capacity. (Id.).

Plaintiff argues that in his complaint:

[I]t is clearly stated that Warden Burnette conspired [with] his staff members [] by deny[ing] Plaintiff's grievances and by consenting to a custom of inadequate medical treatment by not having any medical attention after hours. Plaintiff also stated that Warden Burnette admitted his cognizance of officers (mainly Sergeant Robinson) tending to "get in the gray area." Plaintiff stated that Warden Burnette was not only aware but he condoned [] his officers being irrational and brutal. Not only was Warden Burnette aware of the violations in not having adequate medical attention available after hours, [] he made it a custom. This is enough to be considered subjective evidence in that it put Plaintiff as well as other inmates at serious risk.

(Doc. no. 29, p. 2). Plaintiff also argues that Defendant Burnette "knew of the inadequate medical treatment as well as the conditions that Plaintiff suffered, but did nothing to stop it.

21

This conduct violates clearly established constitutional rights of which a reasonable person would have know." (Doc. no. 35, p. 2).

Plaintiff's claim against Defendant Burnette for the purported ongoing denial of medical treatment must fail because he has indeed named Defendant Burnette as a defendant because of his supervisory role. As a supervisor, Defendant Burnette cannot be held personally liable under § 1983. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). In this case, there is no allegation that Defendant Burnette was actually involved in the alleged ongoing denial of medication – i.e., Plaintiff has not accused Defendant Burnette of withholding or denying Plaintiff's medication or medical treatment. Thus, for Plaintiff's claims against Defendant Burnette to survive, there must be a casual connection between the actions of Defendant Burnette and the ongoing denial of medication and/or treatment.

The "causal connection" can be established "when a history of widespread abuse[7]

---

[7]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated

puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . results] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Here, Plaintiff alleges that he brought this lawsuit against Defendant Burnette because of his policy not to staff medical personnel 24 hours a day at TSP. (Doc. nos. 1, 29). Furthermore, Plaintiff attempts to extend liability to Defendant Burnette by alleging that Defendant Burnette was involved in a conspiracy to deny grievances and that Defendant Burnette was aware of Plaintiff's conditions based on the grievances filed by Plaintiff. (Doc. no. 29).

First, to the extent Plaintiff attempts to support his argument for supervisory liability based on conspiracy claims, this argument must fail. As noted by Defendants, the presiding District Judge concluded that Plaintiff had not stated any viable conspiracy claims, and dismissed those claims. (Doc. no. 14 (order adopting Sept. 14, 2007 Report and Recommendation)). Second, Plaintiff's reliance on Defendant Burnette's policy not to staff medical personnel 24 hours a day is misguided as it relates to his purported ongoing denial of medical treatment claim. More specifically, Defendant Burnette's staffing policy does not

occurrences." Brown, 906 F.2d at 671 (emphasis added).

preclude Plaintiff from receiving medical treatment at any time during the day (it appears that the purported policy results in TSP not having medical personnel available in the evening hours). Accordingly, this policy would not result in Plaintiff being denied ongoing medical treatment. Therefore, Plaintiff has not alleged that Defendant Burnette implemented an improper custom or policy that resulted in deliberate indifference to Plaintiff's constitutional rights at issue in this case. Nor has Plaintiff shown an inference that Defendant Burnette directed any subordinates to act unlawfully or knew that a subordinate would act unlawfully and failed to stop them from doing so. Therefore, Defendant Burnette cannot be held liable based on supervisory liability. Accordingly, Defendants' motion to dismiss at to Defendant Burnette should be **GRANTED**.

### 3. Failure to State a Claim Against Defendant Herman

The Court sanctioned two claims against Defendant Herman based on his medical treatment: (1) a delay in medical treatment on June 10, 2007, and (2) an ongoing denial of medical treatment following the June 10, 2007 incident. Defendants argue that Plaintiff's claims against Defendant Herman should be dismissed because Plaintiff failed to exhaust his administrative remedies with regard to his claim alleging an ongoing denial of medical treatment and medication. (Doc. no. 28, p. 5). Defendants also argue that notwithstanding Plaintiff's failure to exhaust his administrative remedies, Plaintiff fails to sufficiently allege and Eighth Amendment violation against Defendant Herman in either of his medical treatment claims. (Id. at 9-12).

Here, the Court has already determined that Plaintiff sufficiently exhausted his administrative remedies concerning his claim for ongoing denial of medical treatment.

24

Accordingly, the Court will address Defendants' argument that Plaintiff failed to allege a viable Eighth Amendment claim.

Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical need, Plaintiff must meet a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39.

To show the deliberate indifference that would violate the Eighth Amendment, Plaintiff must allege that prison officials knew about and disregarded an excessive risk to his health or safety. See id. at 837. When subjectively weighing whether prison officials are deliberately indifferent, the courts require plaintiffs to show "more than mere negligence," and look for "obduracy and wantonness, not inadvertence or error in good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (citation omitted). To state a viable Eighth Amendment claim, Plaintiff must show that the defendants acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. See id. at 1543-44. Only when medical care is "'so grossly incompetent,

inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be met. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Mere allegations of negligence or malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

Plaintiff makes the following allegations against Defendant Herman: (1) that Plaintiff was first seen by Defendant Herman on June 13, 2007; (2) at this visit, Defendant Herman informed Plaintiff that he was fine and could get up and walk when he was ready to do so; (3) that after Plaintiff's return from the emergency room, Defendant Herman informed Plaintiff that there was not enough money for the MRI prescribed by the emergency room doctors; (4) that despite Plaintiff's unstable condition, Defendant Herman left Plaintiff in the isolation cell for five days; and (5) that Defendant Herman purportedly provided fraudulent information to the medical personnel at CSP, which apparently resulted in Plaintiff not receiving the medical care he believed he required. (Doc. no. 1, pp. 6-7).

Concerning Plaintiff's claim for delay of medial treatment on June 10, 2007, Plaintiff has not met the two-pronged test described above. Most notably, there is no indication that Defendant Herman had any knowledge about Plaintiff and his plight, let alone that he required medical care, until (at the earliest) June 12, 2007, when Plaintiff filed a grievance. The complaint specifically states that Plaintiff informed Jane and John Does that he needed medical attention, but there is no evidence that Defendant Herman was aware of this need. In fact, Plaintiff states the he submitted a grievance on June 12, 2007, complaining that he was in need of medical care, and on June 13, 2007, one day later, he was seen by Defendant

26

Herman. Therefore, Plaintiff does not sufficiently allege deliberate indifference, as he fails to make any allegation against Defendant Herman concerning the delay of his medical treatment on June 10, 2007.

The Court turns next to Plaintiff's claim for deliberate indifference to his health regarding his medical treatment following the June 10, 2007 incident. Defendants argue that Plaintiff's "own allegations reveal that he has received medical treatment since June 10, 2007," and that as a result, Plaintiff's medical treatment allegations do not rise to the level of deliberate indifference. (Doc. no. 28, p. 11). Rather, Defendants argue, Plaintiff has merely alleged that his medical treatment may have been negligent. (Id.). The Court agrees with Defendants that by Plaintiff's own allegations, he did receive medical treatment following the June 10, 2007 incident. However, the Court notes that Plaintiff specifically alleges that when he returned from the emergency room with a prescription for pain medication and an MRI scan, Defendant Herman informed Plaintiff that there were insufficient funds to treat Plaintiff as prescribed by the emergency room doctor, and he "left Plaintiff unstable in an isolation cell for five more days." (Doc. no. 1, p. 6). Plaintiff then implies that his treatment at CSP was negatively affected because of information that Defendant Herman relayed to the CSP medical personnel. (Id. at 7).

Because a claim presented by a *pro se* litigant like Plaintiff should not be dismissed if the facts he has alleged are sufficient to state a claim for relief that is plausible on its face, Bell Atlantic Corp., 127 S. Ct. at 1968-69, the Court concludes that at this stage of the proceedings, Plaintiff has sufficiently stated a claim for ongoing denial of medical treatment against Defendant Herman.

27

In sum, the Court finds that Plaintiff failed to state a claim against Defendant Herman for deliberate indifference based on Plaintiff's claim for denial of medial treatment on June 10, 2007. However, the Court finds that Plaintiff has sufficiently alleged a claim against Defendant Herman for his claim concerning ongoing denial of medical treatment. Therefore, Defendants' motion to dismiss should be **GRANTED** as to Plaintiff's claim against Defendant Herman for delay in medical treatment on June 10, 2007, but **DENIED** as to Plaintiff's claim against Defendant Herman for ongoing denial of medical treatment.

**D.    Relief Sought by Plaintiff**

As relief in the above-captioned case, Plaintiff requested declaratory and injunctive relief. He requests that the acts of Defendants be declared unconstitutional, and he seeks an order directing Defendants not to retaliate against him or his witness, for Defendant Burnette to stop circumventing the grievance process, and for medial personnel to be staffed on a 24 hour a day basis. Plaintiff also seeks compensatory and punitive damages in the amount of $260,000.00 per Defendant. (Doc. no. 1, p. 10).

**1.    Monetary Damages in Official Capacities**

To the extent Plaintiff has attempted to sue all Defendants in their respective official and individual capacities for monetary damages, the Eleventh Amendment bars official capacity claims against state prison officials and/or the Georgia Department of Corrections for monetary damages. Kentucky v. Graham, 473 U.S. 159, 169 (1985). In this case, Plaintiff's allegations relate to actions undertaken by Defendants while performing functions as state prison officials. Therefore, Plaintiff's official capacity claims for monetary damages are not cognizable and should be dismissed. Accordingly, Defendants' motion to dismiss

28

Plaintiff's official capacity claims for monetary damages is **GRANTED**.

### 2. Injunctive Relief

Plaintiff also seeks various forms of injunctive relief. (Doc. no. 1, p. 10). However, as previously noted, Plaintiff was transferred from TSP to Hancock State Prison. Section 1983 claims seeking injunctive relief are rendered moot when a prisoner is released from the facility where the alleged unconstitutional conduct occurred. See Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988); McKinnon v. Talladega County, Ala., 745 F.2d 1360, 1363 (11th Cir. 1984). Thus, any claims for which Plaintiff is seeking injunctive relief are moot because he has been released from the facility where the alleged unconstitutional conduct occurred. Accordingly, Defendants' motion to dismiss as to Plaintiff's injunctive relief is **GRANTED**.

### III. CONCLUSION

In sum, the Court finds that Plaintiff failed to timely serve Defendants Bailey and John Does; failed to exhaust his claim concerning the unsanitary conditions of confinement; failed to state a claim upon which relief can be granted against Defendant Burnette; failed to state a claim upon which relief can be granted against Defendant Herman as to the denial of medical treatment on June 10, 2007; and failed to state a claim upon which relief can be granted for monetary damages against all Defendants in their official capacities. Moreover, Plaintiff's claims for injunctive relief are moot. Accordingly, for the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendants Bailey and John Does be **DISMISSED** without prejudice and that Defendants' motions to dismiss (doc. nos. 27, 28, 32) be

29

**GRANTED IN PART** and **DENIED IN PART.**[8]  The remaining claims which should

proceed are:  (1) the ongoing denial of medical treatment against Defendant Herman in his

individual capacity; and (2) the excessive use of force claims against Defendants Roberson and

Rogers in their individual capacities.

SO REPORTED and RECOMMENDED this ⁄7th day of April, 2009, at Augusta,

Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

___

[8]The Court's conclusion in this regard pretermits consideration of Defendants'
remaining arguments.