# ORIGINAL

| | | |
|---|---|---|
| KEVIN DEMETRIUS WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 308-016 |
| | ) | |
| ANTHONY ROGERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

*Pro se* Plaintiff, proceeding *in forma pauperis*, was formerly incarcerated at Telfair State Prison ("TSP"), in Helena, Georgia, at the time he commenced the above-styled case pursuant to 42 U.S.C. § 1983. Plaintiff has since been released from incarceration. The matter is now before the Court on Defendants' motion for summary judgment. (Doc. no. 53) Plaintiff filed a response to Defendants' motion (doc. no. 58), and Defendants filed a reply in support of their motion (doc. no. 60). For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, that an appropriate final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

## I. PROCEDURAL BACKGROUND

After screening Plaintiff's amended complaint in compliance with 28 U.S.C. §§ 1915(e) & 1915A, the Court allowed the following claims to proceed: (1) excessive force against Defendants Anthony Rogers, an Officer at TSP, Darren Roberson, a Lieutenant at

TSP, Justin Bailey and John Does; (2) deliberate indifference concerning his medical treatment against Defendants Derryl Herman, a Physician's Assistant at TSP, Fred Burnette, and John Does; and (3) conditions of confinement against Defendant Burnette. (Doc. no. 11). Thereafter, Defendants filed motions to dismiss. (Doc. nos. 27, 28, 32). The presiding District Judge granted the motions to dismiss in part, and dismissed Defendant Burnette, and Defendants Bailey and John Does were dismissed based on Plaintiff's failure to timely effect service. (Doc. no. 44). Accordingly, the District Judge allowed only the following claims to proceed: (1) the ongoing denial of medical treatment against Defendant Herman in his individual capacity, and (2) the allegations of excessive use of force against Defendants Roberson and Rogers in their individual capacities. (Id.). These Defendants have now filed a motion for summary judgment on all claims. (Doc. no. 53).

## II.     STATEMENT OF FACTS

### A.     Events Occurring in Plaintiff's Cell

Plaintiff was incarcerated at TSP for his conviction of aggravated assault and aggravated assault of a police officer. (Doc. no. 53, Ex. C (Pl.'s Dep.), p. 18). On June 10, 2007, a code was called in the D-2 Dormitory of the D-Building because Plaintiff's roommate, Vincent Lopez ("Lopez"), was disrupting the count procedure. (Id., Ex. A (Roberson Aff.), ¶ 5; Ex. B (Rogers Aff.), ¶ 5; Pl.'s Dep., pp. 23-24). Pursuant to TSP practice, all the inmates in the D-2 Dormitory were locked down in their cells. (Id., Roberson Aff. ¶ 6; Rogers Aff. ¶ 6; Pl.'s Dep., pp. 24-25). Locking down inmates during the handling of an inmate disruption promotes safety and security of the facility. (Id., Roberson Aff. ¶ 6; Rogers Aff. ¶ 6; Pl.'s Dep., pp. 24-25).

2

Once the inmates were locked down, Defendants Rogers and Roberson, as well as other officers approached Plaintiff's cell. (Id., Roberson Aff. ¶ 7; Rogers Aff. ¶ 7; Pl.'s Dep., p. 42). Plaintiff and Lopez were ordered several times to kneel down on the floor, facing the wall, and to place their hands behind their backs so that they could be handcuffed as a safety measure; Plaintiff and Lopez eventually complied. (Id., Roberson Aff. ¶ 8; Rogers Aff. ¶ 8; Pl.'s Dep., pp. 24, 26). As Lopez was positioned closest to the door, and as Plaintiff was positioned near the back of the cell, Lopez was handcuffed first - without incident - and was removed from the cell. (Id., Roberson Aff. ¶¶ 9, 10; Rogers Aff. ¶¶ 9, 10; Pl.'s Dep., p. 27). Next, Defendant Roberson approached Plaintiff; he placed a handcuff on Plaintiff's right wrist at which time Plaintiff became hostile and aggressive. (Id., Roberson Aff. ¶ 11; Rogers Aff. ¶ 11). Plaintiff maintains that he remained cooperative, but that he turned toward the officers to state that Defendant Roberson was twisting his arm.[1]

---

[1] Although Plaintiff submitted a response to Defendants' motion for summary judgment, he failed to sign the document. (Doc. no. 58). As the Court explained to Plaintiff, when the moving party's motion for summary judgment has pierced the pleadings of the opposing party, the burden shifts to the opposing party to show that a genuine issue of fact exists. (Doc. no. 56, pp. 2-3). This burden cannot be carried by reliance on the conclusory allegations contain within the complaint. (Id.) (citations ommited). Any factual assertions made in the affidavits of the party moving for summary judgment will be deemed admitted by this Court pursuant to Loc. R. 7.5 and Fed. R. Civ. P. 56 unless Plaintiff contradicts the movants' assertions through submission of his own affidavits or other documentary evidence, and the motion for summary judgment will be granted on the grounds that said motion is unopposed. (Id.)(citing Loc. R. 7.5). Here, Plaintiff simply submitted an unsworn, unsigned, self-serving statement in opposition to Defendants' motion for summary judgment. Under Fed. R. Civ. P. 11(a), Plaintiff's unsigned response to Defendants' motion must be stricken unless his omission is promptly corrected. It was not.

Furthermore, although Plaintiff submitted affidavits signed by other prisoners, these affidavits bear no relevance to the issues at hand as none of the prisoners were involved with the events forming the basis of Plaintiff's amended complaint. To the extent Plaintiff submitted his cell-mate's affidavit, Plaintiff acknowledges that his cell-mate was removed from the cell prior to the incident in question. Therefore, his cell-mate was not privy to the

3

On the other hand, Defendants assert that neither Defendant Roberson or any other officer twisted Plaintiff's wrist. (Id., Roberson Aff. ¶ 16; Rogers Aff. ¶ 12). Rather, Defendants provide that Plaintiff stood up, attempted to snatch his wrist away from Defendant Roberson, and shouted that Defendant Roberson was not going to handcuff him. (Id., Roberson Aff. ¶ 11; Rogers Aff. ¶ 11; Pl.'s Dep., p. 28). Defendant Roberson states that he did not let go of the handcuffs while Plaintiff was attempting to pull his arm away because doing so would have created a dangerous situation by providing Plaintiff with a weapon (i.e., the loose handcuff). (Id., Roberson Aff. ¶ 12).

When Plaintiff stood up, Defendant Roberson instructed Plaintiff to get back down, but Plaintiff continued to resist, tried to pull his arm away, and continued to curse at the officers.[2] (Id., Roberson Aff. ¶ 13; Rogers Aff. ¶ 13; Pl.'s Dep., p. 30). Because Plaintiff continued to strongly resist being handcuffed, other officers stepped in and assisted Defendant Roberson. (Id., Roberson Aff. ¶ 14; Rogers Aff. ¶ 14). At that point, Plaintiff was pushed up against the back wall of his cell so that he could be handcuffed. (Id., Roberson Aff. ¶ 14; Rogers Aff. ¶ 15; Pl.'s Dep., p. 31). Defendants provide that neither Defendant Roberson or any other officer hit or kicked Plaintiff while he was pushed up against the wall; they simply secured Plaintiff's arms so that he could be handcuffed. (Id., Roberson Aff. ¶ 15; Rogers Aff. ¶¶ 17, 18). Defendants further provide that the only reason

---

incident at issue in this case. Thus, Plaintiff's response to Defendants' motion for summary judgment serves as nothing more than a self-serving statement and is insufficient to contradict the material facts submitted by Defendants.

[2]It should be noted that Plaintiff provides that he practices martial arts and that he considered Defendant Roberson to be "small." (Doc. no. 53, Pl.'s Dep., pp. 27, 35).

it took multiple officers to handcuff Plaintiff was because of his efforts to resist being handcuffed. (Id., Roberson Aff. ¶ 15). According to Defendants, Defendant Roberson and the other officers only used force, against Plaintiff, necessary to restore order. (Id., Roberson Aff. ¶ 16; Rogers Aff. ¶ 20). Once Plaintiff was handcuffed, Defendant Roberson and Officer Bailey escorted him to the sally port of the D-2 Dormitory, while Defendant Rogers followed behind. (Id., Roberson Aff. ¶ 17; Rogers Aff. ¶ 21; Pl.'s Dep., p. 39).

**B.      Events Occurring in the F-Dormitory Sally Port**

Once Plaintiff was escorted to the sally port of the D-2 Dormitory, Officer Johnson and Defendant Roberson escorted him from the D-Building to the F-Building; Defendant Rogers followed behind. (Id., Roberson Aff. ¶ 20; Rogers Aff. ¶ 24; Pl.'s Dep., p. 40; Ex. D (Miller Decl.) ¶ 5). While in the sally port of the F-2 Dormitory of the F-Building, Defendant Roberson was standing behind Plaintiff, who was facing the wall, because Plaintiff continued to curse the officers and said that he would spit on them. (Id., Roberson Aff. ¶ 21; Rogers Aff. ¶ 26). As Defendant Roberson reached for the door to enter the Dormitory from the sally port, Plaintiff kicked backwards making contact with Defendant Roberson in the lower part of his leg, and shouted that he was going to kill Defendant Roberson when he got out of prison. (Id., Roberson Aff. ¶ 22; Rogers Aff. ¶ 27; Pl.'s Dep., p. 40; Miller Dec. ¶ 6). Plaintiff claims that he does not recall kicking or even touching Defendant Roberson, but if he did, he "just clipped over him" because he was unable to stand on his own. (Id., Pl.'s Dep., p. 42).

Defendants provide that Plaintiff continued to strongly resist Defendant Roberson's and Officer Johnson's efforts to place him under control. (Id., Roberson Aff. ¶ 24; Rogers

5

Aff. ¶ 29). As such, Defendant Roberson and Officer Johnson had to put Plaintiff back on the ground. Once on the ground, Plaintiff continued kicking his legs. (Id., Roberson Aff. ¶ 24; Rogers Aff. ¶ 29). As a result, Defendant Roberson placed Plaintiff's legs into a crossed position and repeatedly ordered him to stop resisting. (Id., Roberson Aff. ¶ 24; Rogers Aff. ¶ 29). Eventually, Plaintiff stated that he would comply with the officers' repeated requests to stop resisting, and did so. (Id., Roberson Aff. ¶ 26; Rogers Aff. ¶ 29, 31). When Plaintiff stopped resisting the officers, Defendant Roberson released his legs and both Defendant Roberson and Officer Johnson assisted Plaintiff back to his feet. (Id., Roberson Aff. ¶ 26; Rogers Aff. ¶ 31).

Defendants maintain that Defendant Roberson did not twist Plaintiff's ankle during the encounter in the F-2 building sally port. (Id., Roberson Aff. ¶ 25; Rogers Aff. ¶ 30). As with the encounter in Plaintiff's cell, Defendants also maintain that Defendant Roberson only used force necessary to restore order as a result of Plaintiff's continued aggressive, hostile and assaultive behavior, insubordinate actions, and failure to follow instructions. (Id., Roberson Aff. ¶ 25; Rogers Aff. ¶ 30; Miller Dec. ¶ 7).

## C. Plaintiff's Medical Treatment

Following the incident with the officers on June 10, 2007, Plaintiff was seen by prison medical personnel. (Id., Ex. E (medical records); Ex. F (Herman Aff.), ¶ 7). At this visit, the medical personnel noted that Plaintiff's right eye was slightly swollen and that Plaintiff complained that he was unable to get up because of severe back pain. (Id., Herman Aff. ¶ 7). Plaintiff was instructed to remain in bed until he could be seen by an Advanced Level Practitioner, and an urgent follow up appointment was scheduled for June 11, 2007.

6

(Id., Herman Aff. ¶ 7).

On June 11th, Plaintiff was examined by Defendant Herman. (Id., Herman Aff. ¶ 8). Plaintiff complained to Defendant Herman that he had pain in his back, behind his right ear, and in his right little finger. (Id., Herman Aff. ¶ 8). Based on the examination, Defendant Herman concluded that Plaintiff had suffered bruising under his right temple and behind his right ear, some bumps on his head, a small abrasion above his chest, a sprained finger, a bruise on the back right side of his head and lower back pain with paraspinal spasms. (Id., Herman Aff. ¶¶ 8, 9). Defendant Herman then prescribed Plaintiff pain medication and muscle relaxers and instructed Plaintiff regarding the use of the prescription medication, as well as ordered x-rays of his finger, face, and spine. (Id., Herman Aff. ¶ 9).

Defendant Herman next examined Plaintiff on June 14, 2007. (Id., Herman Aff. ¶ 10). During the June 14th examination, x-rays were performed; these x-rays revealed that Plaintiff suffered from paraspinal spasms in his lower back, but his spine appeared normal. (Id., Pl.'s Dep., p. 51; Herman Aff. ¶ 10). Furthermore, although the x-rays reveled that Plaintiff had no torn ligaments and Defendant Herman did not notice any radiculopathy, the x-rays did reveal some older degenerative arthritic changes. (Id., Pl.'s Dep., p. 51; Herman Aff. ¶ 10). Based on Defendant Herman's June 14th examination and the x-rays, he concluded that Plaintiff continued to suffer from paraspinal spasms in his lower back, constipation, and bruising and sprain to his right little finger. (Id., Herman Aff. ¶ 11). Accordingly, Defendant Herman prescribed Plaintiff more pain medicine and also offered Plaintiff medicine for his constipation. (Id.).

During the June 14th examination, Defendant Herman, however, also noted that

7

Plaintiff was largely uncooperative with the examination and refused treatment and ice. (Id., Herman Aff. ¶ 10). When Plaintiff informed Defendant Herman that he had been lying down since June 11th, Defendant Herman encouraged him to try and get up when he took his pain medication and ordered that he continue to be given ice for his lower back. (Id., Herman Aff. ¶¶ 10, 11). Notably, Plaintiff disagrees with the characterization that he was uncooperative and states that Defendant Herman left Plaintiff lying on a steel bunk "unstable enough to get up and utilize the toilet;" therefore, Defendant Herman was aware of Plaintiff's condition, but "looked at the situation as if [] Plaintiff was just not complying." (Doc. no. 58, p. 3). However, as explained by Defendants, Defendant Herman treated Plaintiff and prescribed Plaintiff medicine and in Defendant Herman's opinion, Plaintiff was uncooperative, not, unstable. Moreover, it was not Defendant Herman's decision whether Plaintiff remained in isolation/segregation following the incident on June 10th. (Doc. no. 53, Pl.'s Dep., p. 59; Herman Aff. ¶ 31).

In any event, even though Plaintiff was uncooperative during the June 14th examination, because he maintained that he could not get up, Defendant Herman ordered an urgent consultation, requesting that Plaintiff be transported to the local hospital for further evaluation, including possibly, an MRI to rule out radiculopathy. (Id., Herman Aff. ¶ 12). Plaintiff was taken to the Telfair County Hospital emergency room that same day.[3] (Id., Herman Aff. ¶ 12).

---

[3] The emergency room physician deemed Plaintiff to be in stable, fair condition, and determined that Plaintiff was suffering from lower back strain, constipation, and probable radiculopathy. (Doc. no. 52, Ex. F. ¶ 14). The emergency room physician recommended that Plaintiff receive an MRI of his lower spine to rule out radiculopathy and prescribed him pain medication, muscle relaxers, and constipation medication. (Id.).

Defendant Herman next saw Plaintiff on June 15, 2007, upon his return from the hospital. (Id., Herman Aff. ¶ 15). Defendant Herman reviewed the emergency room records, and based on the recommendations of the physician, he prescribed Plaintiff pain medication, muscle relaxers, and constipation medication. (Id., Herman Aff. ¶ 15). Although Defendant Herman did not prescribe the exact pain medication recommended by the emergency room physician, he did offer Plaintiff a comparable pain medication.[4] (Id., Herman Aff. ¶ 15). Defendant Herman noted that Plaintiff did not always accept the pain medication he offered. (Id., Herman Aff. ¶ 15). Contrary to Plaintiff's allegation, at no point did Defendant Herman tell Plaintiff that the State did not have the money to provide Plaintiff with pain medication; indeed, Plaintiff was continuously prescribed pain medication. (Id., Herman Aff. ¶ 16).

Defendant Herman, on June 15th, also submitted a routine consultation request ordering an MRI of Plaintiff's lower back in order to rule out radiculopathy. (Id., Herman Aff. ¶ 17). The request was approved on June 19, 2007. (Id., Herman Aff. ¶ 15). Defendant Herman did not schedule Plaintiff's MRI appointment because although the clinic staff at TSP submit the medical consultation requests for inmates, they do not handle the scheduling of appointments. (Id., Herman Aff. ¶ 18). Defendant Herman again examined Plaintiff on June 19, 2007. (Id., Herman Aff. ¶ 19). Plaintiff again complained of pain in his lower back. (Id.). Based on his examination of Plaintiff, Defendant Herman determined that Plaintiff continued to suffer from lower back pain with paraspinal spasms. (Id., Herman Aff. ¶ 20). Accordingly, Defendant Herman ordered Plaintiff to continue taking pain and

---

[4]Defendant Herman did not prescribe the exact pain medication because they did not carry that particular pain medication at TSP at that time. (Doc. no. 53, Herman Aff. ¶ 15).

constipation medication, he increased Plaintiff's dosage of muscle relaxers, and ordered that Plaintiff receive ice four times each day. (Id., Herman Aff. ¶ 20). Finally, because Plaintiff indicated he was still unable to move, Defendant Herman requested that he be moved to an infirmary bed so that he could receive physical therapy to assist with his movement. (Id., Herman Aff. ¶ 20). The last appointment Defendant Herman had with Plaintiff was on June 19th, because Defendant Herman transferred to another prison on June 20, 2007. (Id., Herman Aff. ¶ 20).

In order to comply with Defendant Herman's request that Plaintiff be moved to an infirmary bed, Plaintiff was moved to Calhoun State Prison ("CSP") on June 20, 2007. (Id., Pl.'s Dep., pp. 59-61; Herman Aff. ¶¶ 22-24). Defendant Herman did not speak with any staff at CSP regarding Plaintiff. (Id., Herman Aff. ¶ 26). Defendant Herman did not know that Plaintiff had been moved to a different facility, let alone that he was moved to CSP. (Id., Herman Aff. ¶ 26). Plaintiff was eventually returned to TSP. (Id., Herman Aff. ¶ 25). The MRI that Defendant Herman had ordered for Plaintiff that was approved on June 19th was scheduled for July 27, 2007; however, it had to be rescheduled due to "unit failure." Plaintiff received the MRI on September 20, 2007. (Id., Herman Aff. ¶ 27). The MRI revealed that Plaintiff had multilevel disc degenerative changes; such changes are typical of changes that occur as an individual ages. (Id., Herman Aff. ¶ 28).

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Applicable substantive law identifies which facts are material in a given case.[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-

---

[5]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B.    Excessive Force

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). To prevail on his excessive use of force claim, Plaintiff must satisfy both an objective and subjective component. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation that was harmful enough to establish a constitutional violation.[6] Id. Although there is no requirement that a plaintiff suffer significant injury, "'de minimis' uses of physical force" are beyond constitutional recognition, provided that the use of force is not of a sort

---

[6]The Supreme Court has explained that not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. (citation omitted)).

"repugnant to the conscience of mankind."[7] Hudson, 503 U.S. at 9-10. That being said, the Supreme Court recently reiterated, "The 'core judicial inquiry' [in Hudson] . . . was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010) (citations omitted). Notably, however, the Supreme Court also reiterated that the absence of serious injury is not irrelevant: "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could have been thought necessary' in a particular situation." Id. (citations omitted).

Turning to the subjective component, Plaintiff must show that the actions taken involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). That is:

> force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: 'The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.'" Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'

Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7). Moreover, the use of restraints is permitted to control inmates who are causing a disturbance, attempting to incite other prisoners, or who represent a danger to themselves or others.

---

[7]Notably, however, the absence of injury alone is not a sufficient basis upon which to dismiss an Eighth Amendment claim. Hudson, 503 U.S. at 4-7.

Williams v. Burton, 943 F.2d 1572, 1575-76 (11th Cir. 1991) (*per curiam*).

Moreover, the analysis of the subjective component of an Eighth Amendment excessive force claim is contextual and requires consideration of many factors: (1) the extent of injury, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 321). Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security.[8] Hudson, 503 U.S. at 6.

Despite this deference to allow the application of preventative measures intended to reduce the incidences of breaches of prison discipline, an Eighth Amendment violation occurs when the force used was not necessary to maintain order or discipline. Skrtich v. Thornton, 280 F.3d 1295, 1301-02 (11th Cir. 2002). The Eleventh Circuit has also ruled that the continued use of harmful force once the necessity for the use of force ceases, as well as any physical abuse directed at a prisoner after he ceases his resistance to authority, may be an Eighth Amendment violation. Williams, 943 F.2d at 1576. Moreover, the Eleventh Circuit has ruled that the use of force on an incapacitated inmate is an Eighth Amendment violation. Skrtich, 280 F.3d at 1302.

Here, the record reflects that a code was called in the dormitory to which Plaintiff was assigned because Lopez, his cell-mate was disrupting the count procedure. (Id., Roberson

---

[8]For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987).

Aff. ¶ 5; Rogers Aff. ¶ 5; Pl.'s Dep., pp. 23-24). The record reflects that the officers responding to the code directed Plaintiff and Lopez to kneel on the floor facing the wall so that they could be handcuffed; Lopez was handcuffed first, without incident, and was removed from the cell. (Id., Roberson Aff. ¶¶ 7, 8, 9; Rogers Aff. ¶¶ 7, 8, 9; Pl.'s Dep., pp. 24, 26, 27, 42). The record further reflects that Defendant Roberson put a handcuff on Plaintiff's right wrist, but that at that point, Defendant Roberson and other officers used (or were required to use) force against Plaintiff. (Id., Roberson Aff. ¶ 11; Rogers Aff. ¶ 11). As a result of this incident, Plaintiff received injuries.

Concerning the events that occurred on June 10th from the time Defendant Roberson placed a handcuff on Plaintiff's right wrist, the versions of the parties vary, but only one version is supported by any record evidence. Plaintiff provides an unsigned, self-serving statement that Defendant Roberson twisted his arm and that as a result, he turned toward the officers to state that his arm was being twisted.[9] On the other hand, Defendant Roberson and various other officers - by their sworn affidavits - explain that it was Plaintiff who became hostile and aggressive, that he stood up and attempted to snatch his wrist away from Defendant Roberson while shouting that Defendant Roberson was not going to handcuff him. (Id., Roberson Aff. ¶ 11; Rogers Aff. ¶ 11). Defendant Roberson further explained that he could not let go of the handcuffs, despite Plaintiff's attempts to pull his arm away, because doing so would have created a dangerous situation by providing Plaintiff with a weapon.

---

[9]Notably, the record reflects that Defendant Rogers never used any force, let alone excessive force, against Plaintiff. Indeed, the record shows, and Plaintiff concedes, that Defendant Rogers did not make any physical contact whatsoever with Plaintiff on June 10, 2010. (Doc. no. 53, Pl.'s Dep. pp. 34-35). As such, Defendant Rogers should be granted summary judgment on the excessive force claim.

(Id., Roberson Aff. ¶ 12). Furthermore, contrary to Plaintiff's unsupported statements, the record does not reflect that Defendant Roberson ever punched Plaintiff while trying to handcuff him, or at any other time. (Id., Roberson Aff. ¶ 15; Rogers Aff. ¶¶ 17, 18). Rather, Defendant Roberson continuously verbally instructed Plaintiff to get back down. (Id., Roberson Aff. ¶ 13; Rogers Aff. ¶ 13; Pl.'s Dep., p. 30). Only when Plaintiff refused to get back down and continued to resist Defendant Roberson, did the other officers step in and assist Defendant Roberson in handcuffing Plaintiff. (Id., Roberson Aff. ¶ 14; Rogers Aff. ¶ 14). Again, because Plaintiff still would not cooperate with the officers, the officers pushed Plaintiff up against the back wall so that they could complete handcuffing Plaintiff. (Id., Roberson Aff. ¶ 14; Rogers Aff. ¶ 15; Pl.'s Dep., p. 31). Indeed, due to Plaintiff's lack of cooperation, it took multiple officers to secure and handcuff him. (Id.).

As such, the record reflects that the officers and Defendant Roberson used only the amount of force necessary to gain control over Plaintiff. Only because of Plaintiff's behavior, his hostility, insubordinate actions, and his failure to follow instructions, were the officers required to use force to restore order. Indeed, once Plaintiff was successfully handcuffed, the record reflects that Plaintiff was escorted to the sally port of the D-Dormitory without incident. (Id., Roberson Aff. ¶ 17; Rogers Aff. ¶ 21; Pl.'s Dep., p. 39).

However, once Plaintiff had been escorted to the sally port in the F-Dormitory, he again became aggressive and hostile and kicked Defendant Roberson in the lower leg and shouted that he was going to kill Defendant Roberson when he got out of prison. (Id., Roberson Aff. ¶ 22; Rogers Aff. ¶ 27; Pl.'s Dep., p. 40; Miller Dec. ¶ 6). At that point again, Defendant Roberson and Officer Johnson (who was assisting Defendant Roberson in

16

escorting Plaintiff to the F-Building) responded by immediately putting Plaintiff on his stomach on the ground. (Id., Roberson Aff. ¶ 24; Rogers Aff. ¶ 29). Plaintiff again resisted the officers' efforts to place him under control; even once he had been placed on the ground, he continued to kick his legs. (Id.). Accordingly, Defendant Roberson, as a result of Plaintiff's continued kicking, put Plaintiff's legs into a crossed position and repeatedly ordered him to stop resisting the officers. (Id.). Eventually Plaintiff complied. (Id.). As soon as he did comply, Defendant Roberson released his legs, and both he and Officer Johnson assisted Plaintiff back to his feet. (Id., Roberson Aff. ¶ 26; Rogers Aff. ¶ 29, 31). There is no evidence in the record that Defendant Roberson twisted Plaintiff's ankle or used force other than what was necessary in an effort to maintain and restore order as a result of Plaintiff's continued aggressive, hostile and assaultive behavior.

Furthermore, Plaintiff's injuries are not consistent with his claim of being maliciously beaten. First, the extent of Plaintiff's injuries were: according to Plaintiff, pain in his back, behind his right ear and in his right little finger; and according to Defendant Herman's examination, bruising under his right temple and behind his right ear, some bumps on his head, a small abrasion above his chest, a sprained finger, a bruise on the back right side of his head and lower back pain with paraspinal spasms. (Doc. no. 53, Herman Aff. ¶¶ 8, 9). Indeed, Plaintiff's injuries consisting of bruising and back spasms are consistent with Defendants' version of the facts that the force applied was applied in a good faith effort to maintain and restore discipline.[10] Second, the record is clear that Defendant Roberson in fact

_____

[10]As Plaintiff was resisting the officers by pulling his arms away from them and kicking at them, the Court presumes that would not have been possible for the officers to gently place him on the wall or gently take him down on the floor. Thus, the fact that

needed to resort to physical force to bring Plaintiff under control because Plaintiff was behaving insubordinately or in a manner inconsistent with officers' control over him. Third, Defendant Roberson continuously instructed Plaintiff verbally to cease resisting his orders, but until the other officers became involved in assisting Defendant Roberson in physically subduing Plaintiff, Plaintiff refused to cooperate. Fourth, Plaintiff, who acknowledges that he practices martial arts, not only refused to comply with the simple directions to remain kneeling with his hands behind his back so that he could be handcuffed, but also kicked Defendant Roberson and continued to attempt to do so while he had been placed on the ground face down. Fifth, the only success Defendant Roberson and the other officers had in gaining control over Plaintiff was by the use of force. There is no evidence that the force applied was so applied maliciously or sadistically to cause harm. Bearing all of this in mind, it is clear that Defendants Roberson and Rogers should be granted summary judgment.

### C.    Deliberate Indifference

Plaintiff also claimed that Defendant Herman was deliberately indifferent to his serious medical needs because of Defendant Herman's alleged ongoing denial and/or delay of medical treatment. Defendant Herman maintains that there was no denial and/or delay in medical treatment.

Bearing the standard for a motion for summary judgment in mind, Defendant Herman's motion for summary judgment should be granted. To survive Defendant Herman's motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude: (1) that Plaintiff had an objectively serious medical need, (2) that Defendant

---

Plaintiff was bruised and had back spasms is not surprising.

Herman acted with deliberate indifference to that need, and (3) that Plaintiff's injury was caused by Defendant Herman's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007) (citations omitted). Here, however, the Court need not decide whether Plaintiff had an objectively serious medical need because even assuming for the sake of argument that he did, he has not shown deliberate indifference to any such alleged need.

To show that Defendant Herman was deliberately indifferent to his medical needs, Plaintiff must offer some proof that Defendant Herman: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendant Herman disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Id. In addition, the plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

To the extent that Plaintiff avers that Defendant Herman's treatment of his medical complaints was deficient, he has provided the Court with no evidence in support of this conclusory allegation. Furthermore, it is noteworthy that the physician at the Telfair County Hospital emergency room found Plaintiff to be in a stable, fair condition, and determined that Plaintiff was suffering from lower back strain, constipation, and probable radiculopathy.

19

(Doc. no. 52, Ex. F. ¶ 14). The emergency room physician recommended that Plaintiff receive an MRI of his lower spine to rule out radiculopathy and prescribed him pain medication, muscle relaxers, and constipation medication. (Id.). Stated otherwise, the emergency room physician prescribed the same or similar course of treatment that Defendant Herman had prescribed and was providing.

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." West, 320 F.3d at 1243 (internal quotation and citation omitted). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

Nothing in the record supports the conclusion that Defendant Herman was

deliberately indifferent to Plaintiff's alleged serious medical needs because of an alleged ongoing denial and/or delay in providing Plaintiff with medical treatment. As noted previously, "[a]n inmate who complains that [a] delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment to succeed." Hill, 40 F.3d at 1188, *abrogated on other grounds by* Hope, 536 U.S. 730 (2002). "Whether [a] delay in treatment was tolerable depends on the nature of the medical need and the reason for the delay." Farrow, 320 F.3d at 1247.

Despite Plaintiff's contention, the record reflects that Plaintiff's medical treatment was not denied and/or delayed. The record establishes that from the date of the June 10th incident, until the time Defendant Herman transferred to another prison, Plaintiff received prompt, near constant medical attention. The record reflects: (1) Plaintiff was seen by TSP medical personnel on June 10th and was scheduled for an urgent follow up appointment for the next day (id., Ex. E; Ex. Herman Aff.¶ 7); (2) Plaintiff was examined by Defendant Herman on June 11th, and he prescribed Plaintiff pain medication and muscle relaxers and ordered x-rays (id., Herman Aff. ¶¶ 8, 9); (3) Plaintiff was examined by Defendant Herman on June 14th, and he prescribed Plaintiff pain and other medication, as well as ordered an urgent consultation requesting that Plaintiff be transported to the local hospital (id., Herman Aff. ¶¶ 10-12); (4) on that same day Plaintiff was transported to the local hospital emergency room and was evaluated by a physician (id.); (5) Plaintiff was next examined by Defendant Herman on June 15th, and was again provided various medications including pain medication and muscle relaxers (id., Herman Aff. ¶ 15); and (6) Plaintiff was examined by

Defendant Herman on June 19th, and again prescribed among other things, pain medication, an increased dosage of muscle relaxers, and Defendant Herman requested that Plaintiff be moved to an infirmary bed (id., Herman Aff. ¶ 20).

Thus, from the time of Plaintiff's June 10th incident until Defendant Herman transferred to a different prison (ten days later), Plaintiff was examined by Defendant Herman four times, was additionally seen by another TSP medical personnel, and was seen by the emergency room physician at the local hospital. Each time Defendant Herman examined Plaintiff, he prescribed medication,[11] and he requested x-rays, and/or that Plaintiff be taken to a hospital for further examination, and/or that Plaintiff be moved to the infirmary. Notably, Defendant Herman had no control over the approval or scheduling of medical requests such as the scheduling of MRI's.

Moreover, Plaintiff's claim for deliberate indifference also fails because the record does not contain any verifying medical evidence to establish a detrimental effect from any purported delay in medical treatment. Indeed, Plaintiff himself does not allege any

___

[11]To the extent Plaintiff takes issue with the fact that Defendant Herman did not provide Plaintiff with the same pain medication as was prescribed by the emergency room physician, his argument fails. The record reflects that Plaintiff was given pain medication. That Plaintiff was not given the pain medication he believed he should receive does not elevate his claim to the level of deliberate indifference.

Indeed, it should be recognized that the mere fact that a prisoner "may have desired [a] different mode[] of treatment" does not give rise to a claim for deliberate indifference. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985). "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments." Id. (citation omitted). Put another way, a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim of cruel and unusual punishment. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). Thus, Plaintiff's argument fails on this point.

detrimental effect. The record is simply devoid of any evidence that a delay in treatment could have caused or exacerbated any of Plaintiff's injuries.

In sum, Plaintiff has not shown a denial and/or delay in medical treatment. Even assuming for the sake of argument that there had been a delay in medical treatment, that assertion alone is insufficient to generate a dispute of material fact because Plaintiff has not shown that the purported "delay" in treatment had a detrimental effect on him. Furthermore, Plaintiff has not provided the Court with any medical evidence to support his conclusion that Defendant Herman was deliberately indifferent to his serious medical needs or that he suffered any detrimental effects as a result of the medical treatment he received while incarcerated at TSP. Rather, the record demonstrates that, while incarcerated at TSP, Plaintiff received prompt constant treatment.

## III.    CONCLUSION

For the foregoing reasons, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment (doc. no. 53) be **GRANTED**, that an appropriate final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 13th day of May, 2010, at Augusta Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

23